OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court and the parties' briefs. Appellant Melvin Hughes appeals the judgment of the Mahoning County Court of Common Pleas denying his Motion for a New Trial. The issues we must resolve are whether Hughes was prejudiced by a juror who failed to inform the court of his prior conviction and whether that same juror was unable to impartially deliberate based upon his diabetes and fear of prosecution. First, we conclude that the juror did not intentionally conceal his conviction and therefore there was no misconduct on his part. Second, we conclude that his prior conviction did not cause him to be biased against Hughes in any way. Finally, because Hughes has presented no evidence aliunde the record that the juror could not properly deliberate because of his illness or fear of prosecution, we cannot conclude that Hughes' was prejudiced by this juror's illness or his alleged fear. Accordingly, it was not error to deny Hughes' Motion for a New Trial and the judgment of the trial court is affirmed.
 Facts {¶ 2} Hughes was indicted on October 4, 2001 for aggravated murder with a life specification and aggravated burglary. The case was scheduled for a jury trial and jury questionnaires were distributed and reviewed. During voir dire, Juror Charles Grant was specifically questioned about his diabetes. He responded that it would not affect his ability to sit as a juror. In the questionnaire, Juror Grant was asked if he had been involved in any prior lawsuits. He responded that he had been in a car accident but he didn't mention any criminal convictions, although it was discovered after the trial that he had been convicted of drug possession in 1951. He was not questioned about any prior convictions during voir dire.
 {¶ 3} The trial proceeded as scheduled. After the second day of deliberations, a note was passed to the court indicating the possibility that someone knew something about the case other than what was presented at trial. The trial court then conducted an individual voir dire of the jurors. The trial court warned the jury of the penalty for lying and then continued its voir dire. The court questioned Juror Grant and one other juror in greater detail. It appears that Juror Grant had wandered into the courtroom after the court was recessed so that he could take a look and see if he knew anyone in the courtroom. He informed the trial court that he was just curious and that he didn't see anyone that he recognized. Defense counsel moved for a mistrial but it was denied. A verdict of guilty was returned on both counts.
 {¶ 4} At the time of sentencing, Hughes' counsel was informed by the trial court that a juror had informed the court of certain irregularities during deliberations, specifically about Juror Grant. The trial court advised counsel to further investigate the matter. Hughes' counsel then met with Juror Grant and Juror Mary Lee Bogensperger. He obtained affidavits from these two jurors and prepared a Motion for a New Trial based upon their contents. Hughes was then sentenced and a timely appeal followed. Hughes requested that this court grant a limited remand so that the trial court could hear Hughes' Motion for a New Trial. This court granted that motion. On remand, Juror Grant testified at the hearing that he was unaware he was reading or signing an affidavit since he wasn't wearing his glasses. He stated that he signed it because defense counsel intimated that it was something else. He further testified that the only reason he found Hughes guilty was because he was guilty. The trial court denied Hughes' motion because he failed to produce any outside evidence of juror misconduct aside from the inadmissible affidavits of the two jurors.
 Competency to Sit on Jury {¶ 5} As his first assignment of error, Hughes alleges:
 {¶ 6} "The trial court erred when it denied Defendant's Rule 33 Motion for a New Trial on the basis that a juror, who having been convicted of a felony, failed to inform the court and was incompetent to sit as a juror pursuant to R.C. 2961.01."
 {¶ 7} Hughes claims Juror Grant concealed that he was a convicted felon, information which would have been grounds to dismiss him for cause and would make him incompetent to sit as a juror. "A person convicted of a felony under the laws of this or any other state or the United States, unless the conviction is reversed or annulled, is incompetent to be an elector or juror or to hold an office of honor, trust, or profit. * * *" R.C. 2961. Similarly, pursuant to R.C. 2313.42 and Crim.R. 24 the fact that a juror has been convicted of a crime which by law renders him disqualified to serve on a jury would be a good cause for challenge.
 {¶ 8} Crim.R. 33(A)(2) permits the trial court to grant a defendant's motion for new trial on the basis of juror misconduct or witness misconduct. The decision of whether to grant a motion for new trial rests in the sound discretion of the trial court. State v.Schiebel (1990), 55 Ohio St.3d 71. The trial court will not be reversed in the absence of an abuse of discretion, which connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217. The Ohio Supreme Court elaborated on the standard of review to be applied to this issue in State v. Lewis (1993),67 Ohio St.3d 2001, holding that unless the record demonstrates that the juror misconduct affected the verdict, an appellate court should not disturb a trial court's decision denying a motion for new trial.
 {¶ 9} Similarly, in State v. Thomas (July 26, 1995), 4th Dist. No. 94 CA 1608, the Fourth District opined:
 {¶ 10} "The analysis of a case involving juror misconduct requires a two-tiered inquiry. First, it must be determined whether there was juror misconduct. Second, if the juror misconduct is found, it must then be determined whether the misconduct materially affected appellant's substantial rights. State v. Taylor (1991), 73 Ohio App.3d 827,598 N.E.2d 818, motion for leave to appeal overruled (1991),62 Ohio St.3d 1453. The state has the burden of proving that juror misconduct is not prejudicial. Id. at 832. If the misconduct is prejudicial, it is reversible error to deny a motion for new trial." Id. at 9
 {¶ 11} Turning to the first tier of the analysis where, as here a claim of jury misconduct involves a juror's concealment of information, the defendant must demonstrate that the jury member was not impartial. See State v. Williams, 79 Ohio St.3d 1, 1997-Ohio-407. A court may infer bias if it finds deliberate concealment, however, if the concealment was unintentional, the defendant must show that the juror was actually biased. Id. See, also, State v. Mohammad (Oct. 24, 2002), 8th Dist. No. 80867.
 {¶ 12} Here, Hughes claims that Juror Grant failed to represent that fifty years ago he had been convicted of possession of heroin and sentenced to a prison term of five years. Hughes does not claim and it does not appear, however, that Juror Grant intentionally misled the Court by providing an inaccurate questionnaire. Nonetheless, Hughes claims this mistake resulted in him not being informed and therefore unable to question Juror Grant on the subject of his prior conviction.
 {¶ 13} The question which was posed to Juror Grant reads as follows: "Have you, any members of your family or any close friends been involved in a lawsuit? If yes, please list the party involved, the type of case (civil or criminal), and explain your involvement or their involvement."
 {¶ 14} It seems that Juror Grant may not have taken the word "lawsuit" to mean criminal prosecution. In fact, at the hearing on Hughes' Motion for New Trial, Juror Grant asked the questioning attorney to explain what he meant by "lawsuit." Juror Grant then explained that he didn't understand what that meant when he was responding to the questions in the questionnaire.
 {¶ 15} We find it significant that defense counsel was free to question the jurors at the time of voir dire about prior criminal convictions. However, defense counsel chose not to question Juror Grant about prior convictions in person, but instead relied upon his responses to the questionnaire. All Hughes had to do in this case to discover whether any of the jurors had been convicted of a felony was to ask. He failed to do so. Moreover, we conclude there was no misconduct on the part of Juror Grant in not revealing his 1951 conviction in response to Hughes' question about involvement in prior lawsuits and Hughes apparently suffered no prejudice by his failure to do so.
 {¶ 16} Hughes' accusation that Juror Grant was biased based on his prior conviction is highly speculative. Hughes argues that Juror Grant feared returning to jail because he was guilty of juror misconduct and therefore voted guilty so as to not draw attention to himself. This argument is tenuous at best. Accordingly, we conclude Hughes' first assignment of error is meritless.
 Effect Upon Juror's Deliberation {¶ 17} As his second assignment of error, Hughes alleges:
 {¶ 18} "The trial court erred when it denied Defendant's Rule 33 Motion for New Trial on the basis that a juror who had physical disabilities and was in fear of prosecution was unable to deliberate to the prejudice of the Defendant, denying Defendant's right to a fair and impartial panel of jurors guaranteed under the Sixth Amendment of the United States Constitution and Section 10, Article 1, of the Ohio State Constitution."
 {¶ 19} This court recognized in State v. Brown, 7th Dist. No. 01CA 229, 2003-Ohio-3551 the longstanding rule that "the verdict of a jury may not be impeached by the evidence of a member of the jury unless foundation for the introduction of such evidence is first laid by competent evidence aliunde, i.e., by evidence from some other source." Id. at ¶ 28 citing State v. Reiner (2000), 89 Ohio St.3d 342, citingState v. Adams (1943), 141 Ohio St. 423, 427.
 {¶ 20} Ohio has adopted this rule in Evid.R. 606(B):
 {¶ 21} "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes." Id.
 {¶ 22} The rule is intended to preserve the integrity of the jury process and the privacy of deliberations, to protect the finality of the verdict, and to insulate jurors from harassment by dissatisfied or defeated parties by prohibiting a court from questioning a juror about what occurred during deliberations, or about anything else that may have affected the juror's mind or emotions in the deliberations process once a final verdict is rendered. State v. Schiebel (1990), 55 Ohio St.3d 71,75; State v. Adams, 141 Ohio St. at 427, 25 O.O. at 572, 48 N.E.2d at 863. However, if there is a foundation of outside evidence of extraneous prejudicial information, or of any threat, bribe, or improper conduct by an officer of the court, the rule permits a court to ask a juror about that outside evidence. See Reiner.
 {¶ 23} In the present case, Hughes argues that the evidence aliunde the record was the trial court's conduct after receiving a note from the jury indicating that a juror knew something other than what was presented at trial. More specifically, the trial court halted deliberations and initiated an investigation which included the cross-examination of Juror Grant in the presence of the other jurors. Hughes claims that, because Grant was singled out by the trial court during the questioning of the jurors, Grant feared that he would be prosecuted for misconduct if he did not succumb to the majority.
 {¶ 24} We find there to be two problems with this argument. First, Juror Grant was not singled out by the trial court when the jurors were each questioned about whether they knew anyone involved in the trial or had received any outside information. Although the trial court questioned Grant about an incident involving him reentering the courtroom after the court was recessed, it appears that just as many questions were asked of Juror Number 10 regarding her employment at the same hospital as some of Hughes' family members.
 {¶ 25} Second, this argument must fail because Hughes has failed to introduce any evidence that the trial court improperly influenced the jury. To the contrary, it appears the trial court was merely trying to ensure that Hughes was receiving a fair trial by questioning whether any improper influences had been brought to bear on any of the jurors.
 {¶ 26} Hughes next argues that Juror Grant did not anticipate the stress deliberations would have on his diabetes and he did not have his medication with him during deliberation. Therefore, Hughes claims Juror Grant was unable to properly deliberate. This very argument was dispelled by the Tenth District in State v. Rowe (1993), 92 Ohio App.3d 652.
 {¶ 27} In Rowe, the defendant alleged that the trial court erred by allowing jury deliberations to continue when it had reason to believe that the jury was deadlocked and that one of the jurors was sick. In response to a guilty verdict, the defendant filed motions for a mistrial, pursuant to R.C. 2953.21(A), and acquittal, pursuant to Crim.R. 29(C), attaching an affidavit in which the juror stated that, had he not been sick and in pain, he would not have voted guilty. The court concluded that these motions were properly denied.
 {¶ 28} "The admissibility of testimony or affidavits of jurors, adduced in order to impeach a verdict, generally hinges upon whether such statements are intrinsic or extrinsic to the verdict itself. Testimony or affidavits which address matters intrinsic to the verdict, that is, directly related to the outcome of deliberations, are generally inadmissible. Tanner v. United States (1987), 483 U.S. 107,107 S.Ct. 2739, 97 L.Ed.2d 90. See, also, Evid.R. 606(B). Noting that federal courts have found jurors' insanity and inability to understand English to be intrinsic to the verdict, Tanner held that extreme intoxication was intrinsic, so that the affected jurors' affidavits were not grounds for vacating the verdict or even requiring the trial court to hold a hearing. Tanner indicated that:
 {¶ 29} "`* * * However severe their effect and improper their use, drugs or alcohol voluntarily ingested by a juror seems no more an `outside influence' than a virus, poorly prepared food, or a lack of sleep.' Id. at 122, 107 S.Ct. at 2748, 97 L.Ed.2d at 107." Rowe at 674.
 {¶ 30} The Rowe court further explained:
 {¶ 31} "In Ohio, there is a second prerequisite for admission of evidence from a juror impeaching a verdict: evidence aliunde, or extraneous, independent evidence from a non-juror possessing first-hand knowledge. State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, certiorari denied Warner v. Ohio (1991), 499 U.S. 961, 111 S.Ct. 1584,113 L.Ed.2d 649.
 {¶ 32} "The juror's affidavit fails to satisfy either prerequisite: personal illness is intrinsic to a juror's vote, and the affidavit is not supported by evidence aliunde. Therefore, the juror's affidavit is not admissible and could not be considered by the trial court or this court." Rowe at 675.
 {¶ 33} We adopt the logic of the Tenth District in Rowe, and conclude that Hughes' argument must fail. Hughes argues that because Juror Grant had diabetes and did not have his medication throughout the entire deliberations process, Grant was less than fair, impartial, and indifferent. There is simply no evidence in the record that Grant's illness had any effect on his ability to deliberate. Hughes' second assignment of error is also meritless.
 {¶ 34} Accordingly, we conclude the trial court properly denied Hughes' Motion for a New Trial and the judgment of the trial court is affirmed.
Judgment affirmed.
Waite, P.J., and Vukovich, J., concur.