{¶ 1} Defendant-appellant Robert Lawwill ("Lawwill") appeals his conviction and sentence on eight counts of gross sexual imposition. For the reasons that follow, we affirm in part, vacate in part and remand for resentencing.
 {¶ 2} The State of Ohio indicted Lawwill on eight counts of gross sexual imposition in violation of R.C. 2907.05 and eight counts of kidnapping in violation of R.C. 2905.01. The case proceeded to jury trial, during which the trial court granted Lawwill's Crim.R. 29 motion for acquittal as to eight counts of kidnapping and denied the same as to the eight counts of gross sexual imposition. The jury returned a *Page 3 
guilty verdict on all eight counts of gross sexual imposition and included a finding that the victim was under age thirteen for each count. The trial court sentenced Lawwill to a total of nine years in prison: three years on each count, with counts one, two and three to be served consecutive to each other and the remaining counts to be served concurrent to counts one, two and three.
 {¶ 3} The events giving rise to the case at bar occurred sometime between December 28, 1992 and December 27, 1999, when the child victim ("J.D.") was between the ages of five and twelve years old. During those years, J.D., Lawwill's niece, spent almost every weekend at Lawwill's home. J.D. testified to the following: Her first sexual contact with Lawwill occurred when she was five years old, while watching television in Lawwill's bedroom; Lawwill placed his fingers on her vagina and touched her leg. Tr. 257-263. J.D. concluded that the same or similar abuse continued through seventh grade. Tr. 264-266.
 {¶ 4} Lawwill has timely appealed, asserting ten assignments of error.
Assignment of Error Number One
 "THE DEFENDANT-APPELLANT WAS DENIED DUE PROCESS OF LAW UNDER THE FOURTH, FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE RIGHT TO BE PROTECTED FROM DOUBLE JEOPARDY WHEN THE TRIAL COURT FAILED TO DISMISS THE DUPLICITOUS INDICTMENT AND FAILED TO ISSUE FINDINGS OF FACT AND CONCLUSIONS OF LAW."
 {¶ 5} Lawwill filed a request for findings of fact and conclusions of law with the trial court on March 20, 2005, and a motion to dismiss on December 28, 2005, *Page 4 
arguing duplicity and denial of his rights, both of which the trial court denied. On appeal, Lawill argues that the trial court abused its discretion in denying said motions because indictments based upon duplicitous counts alleging the same acts during the same times deny him his due process pursuant to State v. Hemphill, Cuyahoga App. No. 85431,2005-Ohio-3726 and Valentine v. Konteh (C.A.6, 2005), 395 F.3d 626.
 {¶ 6} Appellate courts apply an abuse of discretion standard in reviewing motions to dismiss and requests for findings of fact and conclusions of law. State v. Rivers, Cuyahoga App. No. 83321,2004-Ohio-2566. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217.
 {¶ 7} In accordance with Crim.R. 48(B), the trial court did not err in denying Lawwill's request for findings of fact and conclusions of law. Crim.R. 48(B) states: "If the court over objection of the state dismisses an indictment, information, or complaint, it shall state on the record its findings of fact and reasons for the dismissal." Thus, Crim.R. 48 requires the court to issue findings of fact and reasons for the dismissal only where the dismissal is granted. Crim.R. 48 does not require the same where the court denies a motion to dismiss.
 {¶ 8} Nor do we find that the trial court abused its discretion in denying Lawwill's request for findings of fact and conclusions of law or his motion to dismiss based upon the facts and circumstances of the instant case. Here, Lawwill's *Page 5 
indictment indicates the dates of the offenses as occurring between December 28, 1992 and December 27, 1999. Lawwill invokesHemphill, supra, and Valentine, supra, to support his contention that his due process rights were violated when presented with a duplicitous indictment alleging the same acts during the same time frame. However, the circumstances of the instant case are distinguishable from those inHemphill and Valentine.
 "Where such crimes constitute sexual offenses against children, indictments need not state with specificity the dates of the alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged. This is partly due to the fact that the specific date and time of the offenses are not elements of the crimes charged. Moreover, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time. The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse." (Internal citations omitted.)
 State v. Yaacov, Cuyahoga App. No. 86674, 2006-Ohio-5321.
 {¶ 9} The Yaacov court made two distinctions from Valentine andHemphill: First, the child victim in the Yaacov case testified with great specificity; second, Yaacov did not require specific dates for his defense because his defense constituted an outright denial of the offenses charged.
 {¶ 10} With regard to specificity, the child victim in Yaacov
testified as to how, when, and where the abuse occurred, and would have been able to testify with even more specificity had her diary not been missing. Similarly, the prosecution in State v. McGill (2000), Greene App. No. 99 CA 25, 2000 Ohio App. LEXIS 5768, introduced the child victim's report cards into evidence at defendant's first trial in *Page 6 
order to demonstrate what years corresponded with each of the victim's years in grade school. As such the child victim in McGill was able to testify as to what abuse occurred in each year in grade school, thus corresponding to the years alleged in the indictment. Notably, the child victim in McGill did not testify as to specific dates in time when the abuse occurred, and the second district found sufficient evidence to affirm the conviction.
 {¶ 11} In the instant case, prosecution similarly introduced photographs of J.D. that corresponded to each year in grade school. As such, J.D. was able to testify as to what abuse occurred in each grade school year, thus corresponding to the years alleged in the indictment. Specifically, J.D. testified as to sexual contact that occurred at age five, while watching television in Lawwill's bedroom. Tr. 260. At that point, Lawwill put his hands down J.D.'s pants, inside of her underwear, and came into contact with her vagina. Tr. 261. Prosecution thereafter held up a photograph that corresponded to first, second, third, fourth, fifth, sixth and seventh grade and asked J.D. if sexual abuse occurred during those years in grade school. Tr. 264-66. J.D. answered affirmatively. Tr. 264-66. For example:
 "Q. Second grade. Do you recall whether or not he touched you in the second grade?
 Yes, he did.
 Where did he touch you and how did he touch you? He touched my vagina and he would rub it.
 He did that to you while you were in the second grade?
 Yes. *Page 7 
 Now, would the same be true for the third, fourth, fifth, sixth and seventh grade?
 Yes.
 All right. So it was ongoing?
 Yes.
 Now, was there ever a time that he did anything different other than stick his hands down your pants and rub your vagina?
 No." Tr. 265-266.
 {¶ 12} Although J.D. did not specify exact dates upon which the abuse occurred, the prosecution, through use of photographs, was able to establish that the offenses were committed within the time frame alleged. Specifically, Lawwill put his hands down J.D.'s pants and rubbed her vagina at least once a year in the first, second, third, fourth, fifth, sixth and seventh grades. We also find J.D.'s testimony sufficient because specific dates are not an element of the charged offense. See R.C. 2907.05. In addition, J.D, as a child victim, was unable to remember exact dates and times because the crimes in the instant case involved a repeated course of conduct over an extended period of time, namely seven years. Further, the problem here is compounded because Lawwill and J.D. are related as uncle and niece, which facilitated an extended period of abuse. See Yaacov, supra.
 {¶ 13} The second distinction set forth in Yaacov relates to an accused's defense. *Page 8 
 {¶ 14} Courts have found that an accused is entitled to specific dates where required to present his or her defense, for example, where the accused has an alibi. See Yaacov, supra, citing State v. Morgan (C.A.6, 2001), Lucas App. No. L-00-1114. The Yaacov court found that a general denial of all counts in the indictment negates the need for specific dates. Here Lawwill's sole defense is an outright denial of any sexual contact with J.D. Thus, Lawwill did not require specific dates in order to present his defense.
 {¶ 15} The trial court did not abuse its discretion in denying Lawwill's motion to dismiss or his request for findings of fact and conclusions of law.
Assignment of Error Number Two
 "THE TRIAL COURT DENIED THE DEFENDANT-APPELLANT DUE PROCESS OF LAW UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN IT OVERRULED THE MOTION FOR JUDGMENT OF ACQUITTAL AT THE END OF THE STATE'S CASE."
 {¶ 16} Lawwill made an oral Crim.R. 29 motion for acquittal. The trial court granted said motion as to eight counts of kidnapping and denied the same as to eight counts of gross sexual imposition. Lawwill contends that the prosecution failed to prove the element of, "sexually arousing or gratifying either person," pursuant to R.C. _2907.01(B); thus, the trial court erred in denying his motion for judgment of acquittal. We disagree. Crim.R. 29(A) provides,
 "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, *Page 9 information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 17} Courts apply the same standard of review for sufficiency of the evidence claims as for denial of motions for judgment of acquittal.State v. Turner, Cuyahoga App. No. 86916, 2006-Ohio-4098. The standard for sufficiency of the evidence is as follows:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259. "(Internal citations omitted.)
 "Whether the evidence is legally sufficient is a question of law, not fact. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact." Turner, supra. (Internal citations omitted.)
 {¶ 18} In order to convict Lawwill of gross sexual imposition, a jury must find that Lawwill had sexual contact with J.D. "Sexual contact" is defined as, "[A]ny touching of the erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). *Page 10 
 {¶ 19} Lawwill denies any and all sexual contact with J.D. J.D., however, testified that Lawwill slipped his hands down her pants, inside of her underwear and came into contact with her vagina. Tr. 261. Both Lawwill's hand and fingers made contact with J.D.'s vagina. Tr. 261-2. J.D. testified, "He touched my vagina and he would rub it." Tr. 265. Lastly, J.D. testified that Lawwill rubbed her legs. Tr. 263.
 "Absent an admission, proof of defendant's purpose or specific intent requires circumstantial evidence. Consequently, when determining whether a touching was undertaken for the purpose of sexual arousal or gratification, a trier of fact may consider the type, nature and circumstances surrounding the contact. From these facts, a trier of fact may infer a defendant's purpose in making the physical contact."
 State v. George, Franklin App. Nos. 02AP-1412, 02AP-1413, 2003-Ohio-6658. (Internal citations omitted.)
 {¶ 20} Therefore, the trier of fact may look to circumstantial evidence, including the type, nature and circumstance surrounding the contact. Based upon J.D.'s description of the acts that transpired, said acts do not appear accidental or inadvertent. We find J.D.'s testimony is sufficient evidence of sexual contact such that a trier of fact could infer that Lawwill acted with the purpose of sexually arousing or gratifying either himself or J.D.
 {¶ 21} After reviewing all evidence in a light most favorable to the prosecution, any rational trier of fact could find the essential element of acting with the "purpose of sexually arousing or gratifying either person" pursuant to R.C. 2709.01(B). Thus, the trial court appropriately denied Lawwill's motion for judgment of acquittal.
Assignment of Error Three
 "THE DEFENDANT-APPELLANT WAS DENIED DUE PROCESS OF LAW UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH *Page 11 AMENDMENTS OF THE UNITED STATES CONSTITUTION BY BEING CONVICTED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 22} Lawwill first argues that inconsistencies in the victim's testimony, specifically as to her attendance with Lawwill at a nearby race track and the lack of distinction in the indictments, give rise to the verdict being against the manifest weight of the evidence. We disagree. The Ninth District Court of Appeals aptly noted:
 "A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion." State v. Jones, Summit App. No. 22701, 2006-Ohio-2278. (Internal citations omitted.)
 {¶ 23} Alternatively, an appellate court reviews manifest weight of the evidence claims as follows:
 "In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. York, Cuyahoga App. No. 87814, 2006-Ohio-6934, citing State v. Leonard (2004), 104 Ohio St.3d 54, 2004-Ohio-6235. *Page 12 
 {¶ 24} This court must be mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the trier of fact, and a reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt.Turner, supra.
 {¶ 25} Ohio's gross sexual imposition statute states the following:
 "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 * * *
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2709.05.
 {¶ 26} Pursuant to York, supra, and in applying the facts on record to R.C. 2709.05, we find that there is substantial evidence for the trier of fact to find the defendant guilty beyond a reasonable doubt.
 {¶ 27} Lawwill argues that the verdict is against the manifest weight of the evidence for the following two reasons:
 {¶ 28} First, Lawwill argues that because of J.D.'s testimony regarding Lawwill touching her leg on the way to the race track, the verdict is against the manifest weight of the evidence. Lawwill points out that J.D. testified that the only time she went to the track with Lawwill was in either 2000 or 2001, after the dates of his *Page 13 
indictment. However, we find the fact that J.D. provided one statement that may be irrelevant or inconsistent in the eyes of the jury does not give rise to the entire verdict being against the manifest weight of the evidence in the instant case. The jury considered eight witnesses that participated in the trial and the entire series of exhibits. In totem, the jury was capable of finding all elements of gross sexual imposition satisfied as applied to the evidence in the instant case, regardless of J.D.'s testimony about the race track.
 {¶ 29} Second, Lawwill argues that the verdict is against the manifest weight of the evidence because the indictment lacks distinction. Again, we disagree. Pursuant to this court's analysis as to Lawwill's first assignment of error, the eight counts in the indictment do not lack distinction.
 {¶ 30} Therefore, in reviewing the entire record, in weighing the evidence and all reasonable inferences, and in considering the credibility of the witnesses, it is evident that the jury did not lose its way and create a manifest miscarriage of justice.
Assignment of Error Four
 "THE DEFENDANT-APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THE TRIAL COURT OVERRULED THE MOTION FOR MISTRIAL AFTER A JUROR [MARTINEZ] DELIBERATELY CONCEALED THE FACT THAT SHE WAS FAMILIAR WITH THE INVESTIGATING DETECTIVE IN THE CASE BECAUSE HER DAUGHTER WAS A SEXUAL ABUSE VICTIM, EVEN THOUGH SHE SPECIFICALLY DENIED BEING FAMILIAR WITH THE DETECTIVE DURING VOIR DIRE."
 {¶ 31} During voir dire, Lawwill's attorney specifically asked if anyone was a victim of abuse, accused of abuse, or had any other information that may be relevant *Page 14 
to the prosecution, the defense, or the court. Tr. 88-9. Ms. Martinez did not respond affirmatively to his question. Tr. 88-9. Thereafter, during deliberations, the jury foreman wrote the trial court judge a note indicating,
 "It has come to the jury's attention that Juror #7 (Ms. Mary Martinez) had previous experience with detective Arthur King. Approximately 5 years ago Det. King investigated a case where Ms. Martinez's daughter was a victim. The case is closed and the offender was prosecuted and found guilty. However, as this information did not become known or recorded on the record, we as a jury wanted to ensure that it does not effect this case, Jonathan Becker."
 {¶ 32} Defense counsel made an oral motion for mistrial. Thereupon, the court conducted a hearing on the record. The court asked Ms. Martinez if anyone inquired during voir dire if she knew of anyone close to her that was a victim of a crime or if she had a daughter close to her that was a victim of a sex offense. Tr.578. Ms. Martinez answered in the negative. Tr. 578. The court determined that the attorneys did not ask those questions of Ms. Martinez during voir dire, that Ms. Martinez did not misspeak during voir dire, and that Ms. Martinez is capable of deciding the case solely on the evidence and the law in the case at bar. Tr. 578-80. The court then opened the line of questioning to the attorneys and both prosecution and defense declined to question Ms. Martinez. Tr. 580. The court then instructed the jury to continue deliberating, thus overruling Lawwill's motion for mistrial.
 {¶ 33} We disagree with Lawwill's contention that he was denied due process of law when Ms. Martinez, during voir dire, failed to disclose her daughter as a sex abuse victim or that she knew Detective King. *Page 15 
 {¶ 34} "[T]he selection and qualification of jurors are largely under the control of the trial court and, unless an abuse of discretion is clearly shown with respect to rulings thereon, they will not constitute ground for reversal." State v. Stein, Richland App. No. 05-CA-103,2007-Ohio 1153, citing State v. Trummer (1996), 114 Ohio App.3d 456. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore, supra.
 {¶ 35} "[U]nless a juror is challenged for cause, he or she is presumed to be impartial." State v. Williams (1997), 79 Ohio St.3d 1. Courts apply a two-tier analysis as to juror misconduct,
 "First, it must be determined whether there was juror misconduct. Second, if the juror misconduct is found, it must then be determined whether the misconduct materially affected appellant's substantial rights." State v. Hughes, Mahoning App. No. 02-CA-15, 2003-Ohio-6094.
 {¶ 36} In the first tier of the analysis where, as in the case at bar, a claim of jury misconduct involves a juror's concealment of information, the defendant must demonstrate that the jury member was not impartial. See Hughes, supra. Here, Lawwill makes no demonstration of Ms. Martinez' lack of partiality. Oppositely, the transcript reveals Ms. Martinez assured the court that she would make determinations on the evidence and the law as it relates solely to the case at bar. Tr. 579-80.
 {¶ 37} As to the second tier, "A court may infer bias if it finds deliberate concealment, however, if the concealment was unintentional, the defendant must *Page 16 
show that the juror was actually biased." Hughes, supra. "Because the bias of a juror will rarely be admitted by the juror himself, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it, it necessarily must be inferred from the surrounding facts and circumstances." Stein, supra. The record demonstrates that neither prosecution or defense asked the jury during voir dire if they knew Detective King or if they had any family members that were victims of sexual abuse. Upon discovery of Ms. Martinez' background during the deliberation phase, the trial court promptly questioned Ms. Martinez on the record and in the presence of both prosecution and defense counsel. Ms. Martinez gave her assurances that she would act impartially with regard to the case at bar. Thus, there is no evidence on the record of deliberate concealment or actual bias.
 {¶ 38} As Lawwill failed to satisfy the two-tier test set forth inHughes, we find that the trial court did not abuse its discretion in overruling Lawwill's motion for mistrial. Nor were Lawwill's due process rights violated in the instant case.
Assignment of Error Five
 "THE DEFENDANT-APPELLANT WAS DENIED DUE PROCESS OF LAW AND HIS RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT SPECIFICALLY INSTRUCTED THE JURY REGARDING THE FACT THAT THE DEFENDANT TESTIFIED ON HIS OWN BEHALF."
 {¶ 39} The trial court included the following instruction:
 "The defendant has testified as a witness in this case. You will weigh his testimony in the same manner as you weigh the testimony of other witnesses. Just because he's the defendant is no reason for you to disregard and set aside his testimony. You will give his testimony the *Page 17 weight that it's entitled to, taking into consideration his interests in the outcome of the case, and apply to his testimony the same rules that you apply to the evidence of all other witnesses. It is for you to determine what weight you will give to the testimony of any witness who appeared in this case." Tr. 553-554.
 {¶ 40} Lawwill contends that by providing the jury with a general jury instruction as to witnesses and then providing the jury with an additional jury instruction regarding the defendant testifying is error.
 {¶ 41} A review of the transcript reveals that defense counsel made no objection to the jury instruction at issue during trial. Thus, plain error applies.
 "Under Crim R. 30(A), the failure to object to jury instructions waives any error relating to the instructions except in the event of plain error. A defective jury instruction does not rise to the level of plain error unless it can be shown the outcome of the trial clearly would have been otherwise if the instruction was properly given." State v. Robinson, Cuyahoga App. No. 67363; See, also, State v. Hudson, Delaware App. No. 02-CAA-12065, 2003-Ohio-7049. (Internal citations omitted.)
 {¶ 42} The jury instruction at issue in the instant case was appealed and upheld by the Eighth District Court of Appeals. See State v.Perkins (1994), 93 Ohio App.3d 672. However, this court takes note that, "[w]hen an appellate court is called to consider alleged error in a trial court's jury instructions, the challenged or omitted instructions must be reviewed within the context of the entire charge and not in and of itself." State v. Hardy (1971), 28 Ohio St.2d 89. After a review of the entire charge in the instant case, we are unable to conclude that the outcome of the trial clearly would have been otherwise. *Page 18 
 {¶ 43} We do not find plain error in the trial court providing the jury with a specific instruction regarding Lawwill's testimony. Nor do we find that the verdict would be different absent the challenged portion of the jury instructions. Lawwill's fifth assignment of error is overruled.
Assignment of Error Six
 "THE TRIAL COURT PREJUDICIALLY ERRED IN SENTENCING THE DEFENDANT-APPELLANT TO MORE THAN THE MINIMUM AND CONSECUTIVE TERMS OF IMPRISONMENT AND APPLIED AN EX POST FACTO SENTENCING LAW TO HIS SENTENCE."
 {¶ 44} The jury found Lawwill guilty of eight counts of gross sexual imposition in violation of R.C. 2907.05(A)(3). The trial court subsequently sentenced Lawwill to nine years in prison: three years on each count, with counts one, two and three to be served consecutive to each other and counts four through eight to run concurrent to each other and concurrent to counts one, two and three. Lawwill argues that the trial court was required to sentence him to the minimum statutory term because Lawwill had no prior criminal convictions on his record and never served time in prison before. We disagree.
 {¶ 45} Lawwill committed his crimes between 1992 and 1999. On July 1, 1996, the legislature enacted Senate Bill 2 ('S.B. 2"), altering Ohio's statutory sentencing guidelines. Subsequently, the Ohio Supreme Court found the judicial fact-finding requirement as set forth in S.B. 2 unconstitutional. See State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. *Page 19 
 {¶ 46} Here, Lawwill's sixth assignment of error pertains to the ex post facto implications of Foster and S.B. 2. Thus, a review of Lawwill's sixth assignment of error is limited to those crimes that Lawwill committed after July 1, 1996 and the enactment of S.B. 2.
 {¶ 47} In Foster, the Ohio Supreme Court provides that "the trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. "[J]udicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant." Id. A felony of the third degree, such as gross sexual imposition, is subject to a minimum one-year sentence and a maximum five-year sentence. R.C.2929.14. Therefore, the trial court did not err in sentencing Lawwill to three years for each criminal act committed after July 1, 1996, because a three-year sentence is within the statutory range set forth in R.C.2929.14. Further, the trial court did not err in failing to make judicial findings of fact with regard to its imposed sentence pursuant to Foster.
 {¶ 48} Lawwill next argues that application of Foster in the instant case violates the ex post facto clause of Article I, Section 10 of the United States Constitution. The ex post facto clause prohibits "every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." See State v.Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715. Similarly, Section 28, Article II of the Ohio Constitution "prohibits the General *Page 20 
Assembly from passing retroactive laws and protects vested rights from legislative encroachments." Smith v. Smith, 109 Ohio St.3d 285,2006-Ohio-2419. "Although the federal and state constitutions prohibit ex post facto legislation, similar restrictions have been placed on judicial opinions. State v. McGhee, Shelby App. No. 17-06-05,2006-Ohio-5162. However, Foster does not violate federal or state ex post facto clauses. See McGhee, supra; See Mallette. supra. Specifically, the Mallette court found the following:
 "Mallette had notice that the sentencing range was the same at the time he [Mallette] committed the offenses as when he was sentenced. Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, nor did it create the possibility of consecutive sentences where none existed. As a result, we conclude that the remedial holding in Foster does not violate Mallette's due process rights or the ex post facto principles contained therein." Mallette, at paragraph 47.
 {¶ 49} In the instant case, Lawwill does not assert: that he lacked notice regarding his sentencing range or that Foster judicially increased the range of his sentence; that the trial court retroactively applied a new statutory maximum to an earlier committed crime or created the possibility of consecutive sentences where none existed. Lawwill argues merely that he should be sentenced to a minimum and concurrent term. Thus, Lawwill's sixth assignment of error is overruled.
Assignment of Error Seven
 "THE DEFENDANT-APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THE TRIAL COURT SENTENCED HIM USING POST-S.B. 2 SENTENCING LAWS FOR PRE-S.B. 2 ACTS." *Page 21 
 {¶ 50} Lawwill argues that the trial court erred when it sentenced him using post-S.B. 2 sentencing laws for pre-S.B. 2 acts. We agree.
 {¶ 51} Lawwill committed his crimes between 1992 and 1999. The legislature enacted S.B. 2 on July 1, 1996. Despite the enactment of S.B. 2, gross sexual imposition as set forth in R.C. 2907.05(A)(4) remained unchanged, as did its status as a felony of the third degree when committed against a child found to be under the age of thirteen. However, the sentencing law as applied to felonies in the third degree did change. Prior to July 1, 1996, R.C. 2929.11(D) contained the following sentencing guidelines for felonies in the third degree:
 "Whoever is convicted of or pleads guilty to a felony of the third or fourth degree and did not, during the commission of that offense, cause physical harm to any person * * * and who has not previously been convicted of an offense of violence shall be imprisoned for a definite term, and, in addition, may be fined * * *. The terms of imprisonment shall be imposed as follows: (1) For a felony of the third degree, the term shall be one, one and one-half, or two years."
 {¶ 52} Lawwill has no prior violent criminal record, nor did the State add a physical harm specification to any of the sixteen counts in Lawwill's indictment. Thus, Lawwill is subject to a minimum one-year sentence and up to a maximum two-year sentence for each count of gross sexual imposition he committed prior to July 1, 1996.
 {¶ 53} After enactment of S.B. 2, sentencing guidelines for third degree felonies changed as follows:
 "(A) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(4), (D)(5), (D)(6), (G), or (L) of this section and except in relation to an *Page 22 offense for which a sentence of death or life imprisonment is to be imposed, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following * * * (3) For a felony of the third degree, the prison term shall be one, two, three, four, or five years."
R.C. 2929.14.
 {¶ 54} Therefore, Lawwill is subject to a minimum one-year and a maximum five-year sentence for each count of gross sexual imposition committed after July 1, 1996.
 {¶ 55} The Ohio General Assembly was clear that S.B. 2 applies only to crimes committed after July 1, 1996. State v. Rush, 83 Ohio St.3d 53,1998-Ohio-423; State v. Melchoir (1999), Cuyahoga App. No. 72695. Therefore, the trial court is ordered to determine, based upon the evidence before the jury, which criminal acts Lawwill committed prior to July 1, 1996, and which criminal acts Lawwill committed after July 1, 1996. As such, Lawwill's sentence is vacated and remanded for resentencing in accordance with applicable sentencing statutes.
Assignment of Error Eight
 "THE DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT INSTRUCTED THE JURY THAT IF CONVICTED HE COULD RECEIVE PROBATION."
 {¶ 56} During trial, defense counsel made a statement regarding the seriousness of the case at bar and Lawwill's potential to serve a life sentence if convicted. Tr. 560-61. After conferring with counsel out of the presence of the jury and over defense counsel's objection, the trial court read a curative jury instruction to the jury as follows: *Page 23 
 "In this case the law permits a range of sentencing possibilities, including community control sanctions and up to five years per count. There is no mandatory term or sentence on these cases. This is soley [sic] for the Court to decide depending on the findings of the jury." Tr. 565-66.
 {¶ 57} Lawwill argues that said instruction denied him due process of law and a fair trial. We disagree.
 {¶ 58} The proper standard of review of an appellate court as to jury instructions is an abuse of discretion. State v. Bell, Cuyahoga App. No. 87769, 2006-Ohio-6592. As stated previously in Blakemore, "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore, supra.
 {¶ 59} The jury is not to play any role in sentencing an offender.State v. Grant, 67 Ohio St.3d 465, 1993-Ohio-171. In addition, "Juries are presumed to follow and obey the curative instructions given by a trial court." State v. Johnson, Cuyahoga App. Nos. 81692 81693, 2003-Ohio-3241. "Simply pointing to an adverse verdict is not sufficient evidence to overcome this presumption." State v. Breckenridge, Franklin App. No. 05AP-868, 2006-Ohio-5038. In the case sub judice, Lawwill alleges that the jury instruction was unnecessary, misleading and prejudicial, but fails to provide evidence, save for a guilty verdict, to overcome the presumption that the jury followed and obeyed the judge's curative instruction. Nor has this court found any evidence that the trial court abused its discretion in providing the jury with a curative instruction. Accordingly, Lawwill's eighth assignment of error is overruled. *Page 24 
 Assignment of Error Nine
 "THE DEFENDANT-APPELLANT WAS DENIED DUE PROCESS OF LAW AND HIS RIGHT TO A FAIR TRIAL WHEN HE WAS NOT PRESENT IN OPEN COURT DURING THE JURY QUESTIONING REGARDING MS. MARTINEZ'S FAMILIARITY WITH THE INVESTIGATING DETECTIVE IN THE CASE."
 {¶ 60} Section 10, Article I of the Ohio Constitution states, "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." "A criminal defendant has a federal and state fundamental due process right to be present at all critical stages of his trial, absent a waiver of rights or other extraordinary circumstances." State v. Drummond, Mahoning App. No. 05-MA-197, 2006-Ohio-7078. (Internal citations omitted.)
 {¶ 61} Additionally, Crim.R. 43(A) reads:
 "The defendant shall be present at arraignment and every stage of the trial including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules. In all prosecutions, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the verdict * * *."
 {¶ 62} Here, defense counsel made no objection to conducting the hearing at issue in Lawwill's absence. Where there exists a failure to object on the record, a plain error analysis is appropriate. State v.Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304.
 {¶ 63} A trial court is not required to obtain "an express `on the record' waiver from the defendant for every trial conference which a defendant may have a right to attend." United States v. Gagnon (1985),470 U.S. 522. *Page 25 
 {¶ 64} "[A] trial judge may not communicate with the jury in the defendant's absence." State v. Abrams (1974), 39 Ohio St.2d 53. However, where a defendant is absent from a hearing at which his or her counsel is present, due process is not necessarily offended. Gagnon, supra;State v. Armas, Clermon App. No. CA2004-01-007, 2005-Ohio-2793. The Supreme Court of Ohio found that where the following three factors were satisfied, any error as a result of defendant's absence is harmless:
 "First, where the court found that the defendant's interests were more than adequately protected by his attorney who was present. * * * Second, the court found that his presence would have contributed little. * * * Third, the court found that his failure to timely object constituted waiver of the argument * * *." State v. Drummond, supra, citing State v. Williams (1983), 6 Ohio St.3d 281.
 {¶ 65} In the instant case, Lawwill's counsel was present during the hearing along with prosecution. The entire hearing was conducted on the record. A review of the record demonstrates that Lawwill's interests were more than adequately protected. A review of the transcript also reveals that Lawwill's presence would have made little contribution to the hearing at issue. Further, Lawwill failed to timely object, thus constituting waiver of the argument.
 {¶ 66} Lawwill, to support his contention that the trial court committed plain error, cites to State v. Hardy, Cuyahoga App. No. 82620,2004-Ohio-56. In Hardy, the trial court communicated with the jury via handwritten notes without first conferring with either prosecution or defense counsel; whereas here, the trial court *Page 26 
conducted the hearing on the record and in the presence of counsel. The case sub judice is thus distinguishable from Hardy.
 {¶ 67} This court finds no plain error in the instant case. Lawwill's ninth assignment of error is overruled.
Assignment of Error Ten
 "THE DEFENDANT-APPELLANT WAS DENIED DUE PROCESS OF LAW THROUGH THE CUMULATIVE ERRORS THAT OCCURRED IN HIS CASE."
 {¶ 68} Lawwill argues that even where reversal is not established in any of his prior nine assignments of error, that there exists multiple instances of error that, cumulatively, deprived him of a fair trial. We disagree.
 "It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. In order to find "cumulative error" present, we first must find that multiple errors were committed at trial. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors." State v. Djuric, Cuyahoga App. No. 87745, 2007-Ohio-413. (Internal citations omitted.)
 {¶ 69} As we found no error in this case, save for sentencing, the doctrine of cumulative errors does not apply.
Judgment affirmed in part, vacated in part and remanded for resentencing.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. *Page 27 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. MARY EILEEN KILBANE, JUDGE
 FRANK D. CELEBREZZE, JR., A.J., and KENNETH A. ROCCO, J., CONCUR *Page 1