JOURNAL AND OPINION
{¶ 1} Defendant Sylvester Smith, Jr. appeals from his jury conviction on one count of escape, in violation of R.C. 2921.34. He maintains that the conviction is unsupported by sufficient or credible evidence and that the court erred by ordering his sentence to be served consecutive to sentences in two unrelated drug cases. We conclude that the evidence was both sufficient and competent to establish the elements of escape. We also conclude that the court did not abuse its discretion by ordering the sentence for escape to be served consecutively to the drug convictions. We therefore affirm the conviction and sentence.
 {¶ 2} The state presented one witness — a parole officer from the Adult Parole Authority. The parole officer testified that appellant had been released from prison into transitional release control. This meant that appellant lived in a halfway house as part of his transition from prison before being released to begin a three-year period of post-release control. Post-release control commenced with a meeting between appellant and the parole officer in which appellant signed a document that memorialized the conditions of his supervision. Among the conditions he agreed to was that he would "report to my supervising officer according to the instructions that I have received." He also agreed to "keep my supervising officer informed of my residence and place of employment" and that he would obtain permission from the supervising parole officer before changing his residence. Finally, he acknowledged *Page 3 
that "* * * if I am a [sic] release and abscond supervision, I may be prosecuted for the crime of escape, under section 2921.34 of the Revised Code."
 {¶ 3} The parole officer required appellant to report to him once per month starting in October 2004. Appellant missed every appointment from that date through May 2005. The parole officer received no telephone calls or other notification as to why appellant did not report. He unsuccessfully tried to locate appellant by going to the address appellant had provided. A check of every other address he had on file for appellant likewise proved futile. By May 2005, after having prepared a warrant for appellant's arrest, the parole officer learned that appellant had been arrested on unrelated criminal charges and held in jail. The parole officer contacted appellant and told him to report within 24 hours of his release from jail.
 {¶ 4} Appellant reported as ordered and explained to the parole officer that he missed all of his previously scheduled appointments because "he was on the run because he had some trouble with the law." The parole officer stressed the importance of the appointments, and changed them from monthly to weekly. At that time, appellant gave the parole officer a new address on Cleveland's near west side.
 {¶ 5} Appellant did not appear for his next appointment, and missed every other appointment from May through September 2005, despite the parole officer's attempts to locate him at the address he had been given in May 2005.
 {¶ 6} Appellant's sister testified for the defense and stated that she knew that appellant had been released from the halfway house, but did not know where he had *Page 4 
been living. She said that in September 2005, she learned that appellant had been "shot a couple of times" and hospitalized. She could not say when he had been shot, stating only that it had to have happened some time prior to September 2005. Appellant called her from the hospital and asked her to contact his parole officer. She said that she called the parole officer and told him that appellant "was out of commission, that something happened to him serious and he would get in contact with him when he can." She said that she later left voice mail messages for the parole officer after appellant "had got jumped," an apparent reference to an incident unrelated to his hospitalization. The sister also testified that she had personal knowledge that appellant reported to his parole officer, knowing, for example, that he submitted to drug testing at the "Marion Building." She claimed to have taken him to the parole officer more than five times.
 {¶ 7} The state recalled the parole officer who said that his department did not have any offices at the Marion Building and that there would be no need for appellant to report there. He also testified that drug testing was not a condition of parole because the state of Ohio had curtailed drug testing in the budget occurring in late 2004 and early 2005. The parole officer said that he met appellant's sister after May 2005, and asked her to have appellant contact him. He believed the sister's attempts at cooperation were ambivalent and that she was "still protecting her family" by telling him that appellant lived with her "off and on." He said he received a voice mail notifying him that appellant had been hospitalized, and another voice *Page 5 
mail from appellant's mother stating that appellant no longer lived with her and that she did not know where he was living.
 I {¶ 8} Appellant first argues that the court erred by denying his motion for judgment of acquittal because there was insufficient evidence to prove that he "escaped." He claims the evidence showed that he was reporting to his parole officer until the time he entered the hospital, and that he had his sister call the parole officer at that time. He maintains that these actions did not amount to escape.
 {¶ 9} In State v. Bridgeman (1978), 55 Ohio St.2d 261, the syllabus states, "[p]ursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." This standard is identical to that used when we review a claim that there is insufficient evidence to support a conviction: we view the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 10} R.C. 2921.34(A)(1), which defines the offense of escape, states: "No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to *Page 6 
detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement."
 {¶ 11} "Detention" is defined in R.C. 2921.01(E) in relevant part as "* * * supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution * * *." In State v. Thompson, 102 Ohio St.3d 287,2004-Ohio-2946, the syllabus states, "[a] parolee who fails to report to his parole officer after March 17, 1998, may be prosecuted for escape under R.C. 2921.34, regardless of when his or her underlying offense was committed."
 {¶ 12} Viewing the facts in a light most favorable to the state, we find that a reasonable trier of fact could conclude that the state provided evidence for all the essential elements of the offense of escape. Appellant was under detention following his release from the halfway house and knew that he had a duty to report to his parole officer. The parole officer testified that appellant missed his appointments without being excused. From October 2004 until May 2005, appellant failed to contact his parole officer and likewise failed to provide an address where he could be found. These facts were sufficient to establish the elements of escape.
 {¶ 13} We find unpersuasive appellant's argument that his hospitalization excused his reporting requirements. Although the record is unclear on the exact dates of his hospitalization, there is no doubt that it occurred after May 2005. By that time, appellant had missed all of his scheduled appointments from October 2004 to *Page 7 
May 2005. The state's evidence showed that appellant offered no compelling reason for his absences other than to say that he missed them because he had been "on the run" from the law. He thus, without excuse, failed to report to his parole officer.
II
 {¶ 14} Appellant next argues that his conviction is against the manifest weight of the evidence. He offers no discussion of the evidence to support this argument; instead, he makes the sole suggestion, without support in the record or citation to authority, that "[i]t is quite likely that the jury held the fact that Appellant had prior convictions and had previously been to prison against him." This is inadequate under App.R. 16(A)(7), as it does not make any argument supported by either the record or the law[1]. *Page 8 
 {¶ 15} Despite counsel's failure to argue the matter independently, we have undertaken our own review of the record and conclude that the jury's verdict was supported by competent, credible evidence. SeeState v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Appellant's signature on the document listing the conditions of his release undeniably showed that he knew he had to report to the parole officer. He missed six straight monthly appointments, and could only say that he had been on the run from the law. This was not a valid excuse for failing to report.
 {¶ 16} To the extent that appellant offered any evidence, it lacked credibility. For example, appellant's sister testified that he submitted to drug testing at the Marion Building, yet the parole officer stated that drug testing had not been a condition of release and that his department had no offices at the Marion Building. Moreover, she could not testify to where appellant had lived during the time in question. Given these discrepancies in her testimony, the jury had reason to question appellant's evidence. We therefore conclude that the jury did not lose its way by finding appellant guilty of escape.
 III {¶ 17} For his final assignment of error, appellant argues that the court erred by imposing consecutive sentences without first making the statutory findings that consecutive sentences were necessary to protect the public from future crime by the appellant and that consecutive sentences were not disproportionate to the *Page 9 
seriousness of his conduct. Appellant concedes that these arguments have been rendered invalid by State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, but maintains that Foster is unconstitutional because it violated principles of ex post facto and due process guarantees against the application of retroactive laws. We summarily overrule this assignment as we have repeatedly rejected these constitutional challenges to Foster. See, e.g., State v. Lawill, Cuyahoga App. No. 88251, 2007-Ohio-2627, at ¶ 46-49; State v. Mallette, Cuyahoga App. No. 87894, 2007-Ohio-715; State v. Ferko, Cuyahoga App. No. 88182,2007-Ohio-1588.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, JUDGE
JAMES J. SWEENEY, P.J., and KENNETH A. ROCCO, J., CONCUR
[1] Appellate counsel are reminded that they have no obligation to present unfounded arguments and, in fact, have an ethical duty to refrain from advancing a claim or defense that is unwarranted under existing law. See DR 7-102(A)(2). In the event counsel believes that an appellate assignment would compromise this ethical duty, counsel may file a brief pursuant to Anders v. California (1967), 386 U.S. 738, which (1) indicates that a careful review of the record from the proceedings below fails to disclose any errors by the trial court prejudicial to the rights of appellant upon which an assignment of error may be predicated; (2) lists two potential errors that might arguably support the appeal; (3) requests that this court review the record independently to determine whether the proceedings are free from prejudicial error and without infringement of appellant's constitutional rights; (4) requests permission to withdraw as counsel for appellant on the basis that the appeal is wholly frivolous; and (5) certifies that a copy of both the brief and motion to withdraw have been served upon appellant. *Page 1