**[Cite as *State v. Wyatt*, 2023-Ohio-4369.]**

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

VALERIE L. WYATT,

        Defendant-Appellant.

**CASE NO. 2023-L-039**

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2022 CR 000814

---

**O P I N I O N**

Decided: December 4, 2023
Judgment: Affirmed

---

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Eric M. Levy*, 55 Public Square, Suite 1600, Cleveland, OH 44113 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Following an incident in which appellant, Valerie L. Wyatt ("Ms. Wyatt"), went to her estranged spouse's apartment late at night, let herself in through the back sliding door, and attempted to take their minor child, a jury convicted Ms. Wyatt of burglary, kidnapping, abduction, and two counts of violating a protection order. Ms. Wyatt appeals from the judgment of the Lake County Court of Common Pleas that sentenced her to an aggregate prison term of three to four and a half years on merged counts of burglary and kidnapping.

{¶2} Ms. Wyatt raises seven assignments of error for our review. She contends (1) the trial court erred when it proceeded with trial without her presence; (2) the evidence was insufficient to support her convictions; (3) the jury verdicts were against the manifest weight of the evidence; (4) the trial court erroneously instructed the jury on kidnapping, omitting that "to remove or restrain" the victim must be done with the purpose of facilitating the commission of a crime or flight thereafter; (5) her trial counsel was ineffective because he failed to stipulate to her prior conviction for violating the civil protection order ("CPO") against her; (6) her indefinite sentence for kidnapping pursuant to the Reagan Tokes Law is unconstitutional; and (7) her sentence is contrary to law because the trial court failed to advise her of the notifications of indefinite sentencing pursuant to R.C. 2929.19(B)(2)(c).

{¶3} After a careful review of the record and relevant law, we find Ms. Wyatt's assignments of error to be without merit.

{¶4} (1) A review of the record reveals Ms. Wyatt was voluntarily absent from the trial. The court provided her with several notifications as well as a status conference to advise her of the scheduled dates for trial, she was present for the first day of trial when the jury was empaneled, and she gave no other reason for her absence except that she could not "find a ride." Most fundamentally, she failed to demonstrate her due process rights were violated and her absence deprived her of a fair and just hearing.

{¶5} (2) The state presented sufficient evidence by way of witness testimony and evidence, including police body camera videos, from which a jury could find, beyond a reasonable doubt, that Ms. Wyatt was guilty of burglary and kidnapping. More specifically, there was sufficient evidence introduced that demonstrated Ms. Wyatt acted

2

with the "purpose" "to commit a crime" and/or "facilitate the commission of a crime or flight thereafter." Ms. Wyatt entered the home of her estranged spouse in violation of the CPO against her, she told him she was taking their minor child, and she then attempted to flee with the child.

{¶6} (3) A review of the trial evidence reveals the manifest weight of the evidence supports the jury's verdict. A conviction is not against the manifest weight of the evidence simply because the jury believed the state's version of events over the defendant's.

{¶7} (4) A review of the court's instruction to the jury on the charge of kidnapping reveals it is a proper instruction, i.e., it is related to the facts of the case, it is an accurate statement of the law, and it is relevant to the offense charged. Further, it mirrors the Ohio Jury Instructions, which, while not controlling, are persuasive authority that most Ohio courts follow. Moreover, a plain reading of the jury instruction reveals the trial court did not omit, as Ms. Wyatt contends, that the jury was required to find she acted with the "purpose to facilitate the commission of a crime or flight thereafter."

{¶8} (5) Ms. Wyatt has failed to demonstrate her counsel was ineffective for failing to stipulate to her prior conviction for violating the CPO. The fact of Ms. Wyatt's prior conviction, a necessary element of the charges of violating a protection order, was presented to the jury. The factual basis underlying the CPO and her prior conviction for violating it were not presented to the jury per defense counsel's request. In addition, other witnesses testified to the CPO's existence. Thus, no prejudice arose from counsel's failure to stipulate to the prior conviction.

3

Case No. 2023-L-039

**{¶9}** (6) Pursuant to the Supreme Court of Ohio's holding in *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, the Reagan Tokes Law under which the trial court imposed Ms. Wyatt's indefinite sentence for kidnapping is constitutional.

**{¶10}** (7) Ms. Wyatt's last assignment of error is moot since the trial court advised her of the indefinite sentencing notifications pursuant to R.C. 2929.19(B)(2)(c) while her appeal was pending at a hearing on judicial release.

**{¶11}** Thus, the judgment of the Lake County Court of Common Pleas is affirmed.

## Substantive and Procedural History

**{¶12}** After being bound over from the Willoughby Municipal Court, the Lake County Grand Jury indicted Ms. Wyatt on five felony counts: (1) burglary, a second-degree felony, in violation of R.C. 2911.12(A)(1); (2) violating a protection order, a third-degree felony, in violation of R.C. 2919.27(A)(1) and (B)(4); (3) violating a protection order, a fifth-degree felony, in violation of R.C. 2919.27(A)(1) and (B)(3)(a); (4) kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(2); and (5) abduction, a third-degree felony, in violation of R.C. 2905.02(A)(1).

**{¶13}** The court issued a judgment entry on December 22, 2022, stating that jury selection would take place on Friday, January 13, 2023, at 12:30 p.m., and opening statements would commence on Tuesday, January 17, 2023, at 8:30 a.m. The court directed defense counsel to inform Ms. Wyatt by phone of the scheduled dates and to send her the judgment entry via U.S. mail. On January 10, 2023, the trial court held a status conference to ensure Ms. Wyatt was aware of the dates for jury selection and trial. At the conference, Ms. Wyatt informed the court she did not have any questions.

4

{¶14}  Accordingly, on January 13, 2023, Ms. Wyatt appeared with her counsel for jury selection, and a jury was empaneled.

### Ms. Wyatt's Absence From Trial

{¶15}  On January 17, 2023, however, Ms. Wyatt failed to appear for trial.  Defense counsel explained to the court that Ms. Wyatt's "ride fell through," and she was unable to obtain transportation to get to the court.  He asked the court to consider a continuance until she arrived.  The court denied a continuance, asked the prosecutor to issue a warrant, and advised the jury they were to draw no inferences from Ms. Wyatt's absence.

{¶16}  During a mid-morning recess, the trial court noted for the record that "we picked this jury on Friday afternoon at 12:30.  The defendant was here then.  She was informed, along with everyone else, that we would be starting at 8:30 this morning.  The jurors were here by 8:30, the parties were here by 8:30 and the attorneys and the State had a number of witnesses ready to go at 8:30.  The jury was brought into the courtroom at 8:50, so the defendant did not appear during that period of time.  It's now a little bit after 10:00.  The defendant has yet to make an appearance."  The court further noted Ms. Wyatt lived approximately 21.9 miles away; it was a 27-minute ride to the courthouse; and she could have utilized a ride-sharing program, but she was still not present an hour and half after the proceedings began.

{¶17}  In a judgment entry issued at the end of the jury trial, the court revoked Ms. Wyatt's bond and issued a warrant for her arrest.

### The CPO

{¶18}  On the morning of trial, the state presented two copies of Ms. Wyatt's CPO, one certified and one uncertified, with redactions of the court's factual findings for granting

5

the CPO. The trial court allowed the certified, unredacted copy to be made a part of the record and allowed the uncertified, redacted copy to go to the jury per defense counsel's request.

*The Jury Trial*

**{¶19}** The state presented the testimony of several officers from the Willoughby Police Department and Ms. Wyatt's husband, Frank Wyatt ("Mr. Wyatt").

**{¶20}** The state's evidence and testimony revealed that a CPO had been granted on September 16, 2021, against Ms. Wyatt to protect Mr. Wyatt and their daughter, G.W. (D.O.B. 4/27/15). Although Ms. Wyatt was served with a summons for the full CPO hearing on August 3, 2021, she failed to appear. In April 2022, Ms. Wyatt pleaded guilty to one count of violating the CPO, a first-degree misdemeanor. The uncertified redacted copy of the CPO, the service of the summons on Ms. Wyatt, and Ms. Wyatt's conviction for violating the CPO were submitted to the jury.

**{¶21}** On the night of July 26, 2022, Mr. Wyatt and G.W. were watching a movie. G.W. had fallen asleep at 6:00 p.m. after a day of swimming but had woken up around 11:00 p.m. Ms. Wyatt entered the apartment through the patio screen door. She sat down on the couch next to G.W. Mr. Wyatt asked her what she needed. Ms. Wyatt told him she was going to take G.W. and grabbed her. Mr. Wyatt called 911 and stayed on the phone with dispatch until the police arrived on the scene. The recording of the call was played for the jury.

**{¶22}** While on the phone with dispatch, Mr. Wyatt followed Ms. Wyatt and G.W. out of the apartment. Mr. Wyatt stood in front of Ms. Wyatt's car attempting to block her. Ms. Wyatt started walking down the street with G.W. He described Ms. Wyatt as highly

6

intoxicated: She "just talks" and "throws out a lot of accusations." When the police arrived, Ms. Wyatt and G.W. were at a bus stop at the front of Mr. Wyatt's apartment complex. G.W. appeared very upset and scared. She was crying and shaking. Ms. Wyatt told the officers she was taking G.W. because Mr. Wyatt was sexually abusing her. The police told G.W. to go to her dad, and he took her back to the apartment. Ms. Wyatt resisted but was eventually arrested and taken to the station. The officers' body camera videos were played for the jury.

{¶23} The jury returned guilty verdicts on all five counts.

### Sentencing

{¶24} Several months later, after a presentence investigation, the sentencing hearing was held. For purposes of sentencing, the court found that counts two and three (violating a CPO) merged into count one (burglary) and count five (abduction) merged into count four (kidnapping).

{¶25} The trial court sentenced Ms. Wyatt to serve a three-year prison term on the count of burglary, and a concurrent, indefinite prison term of three to four and one-half years on the count of kidnapping. The court further found Ms. Wyatt is a violent offender pursuant to R.C. 2929.14(D)(2).

{¶26} Ms. Wyatt raises seven assignments of error on appeal:

{¶27} "[1.] The trial court erred when it proceeded to trial without appellant present in court.

{¶28} "[2.] Appellant's convictions must be vacated with appellant acquitted of all charges as the convictions were not supported by sufficient evidence.

7

{¶29} "[3.] All convictions entered against appellant must be vacated and the case remanded for a new trial as being against the manifest weight of the evidence presented at trial.

{¶30} "[4.] The trial court committed plain error and denied appellant due process of law where it failed to instruct the jury that kidnapping was required to be committed with purpose to facilitate a felony or flight thereafter.

{¶31} "[5.] Appellant was denied her Sixth Amendment right to trial counsel where counsel was ineffective by failing to stipulate to the prior conviction for a protection order violation.

{¶32} "[6.] Appellant's indefinite sentence imposed under the Reagan Tokes sentencing scheme violates her rights under the United States Constitution.

{¶33} "[7.] Appellant's sentence is contrary to law where the trial court failed to comply with the required notices contained in R.C. 2929.19(B)(2)(c) when imposing sentence."

**Absence from Trial**

{¶34} In Ms. Wyatt's first assignment of error, she contends the trial court erred when it allowed trial to proceed despite her absence, thus violating her constitutional right to due process.

{¶35} Article I, Section 10 of the Ohio Constitution states, "'[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel.'" *State v. Blanton*, 2018-Ohio-1278, 110 N.E.3d 1, ¶ 100 (4th Dist.), quoting *State v. Lawwill*, 8th Dist. Cuyahoga No. 88251, 2007-Ohio-2627, ¶ 60. "'A criminal defendant has a federal and state fundamental due process right to be present at all

8

critical stages of his trial, absent a waiver of rights or other extraordinary circumstances.'" *Id.*, quoting *State v. Drummond*, 7th Dist. Mahoning No. 05-MA-197, 2006-Ohio-7078 (Internal citations omitted.)

{¶36} The Supreme Court of Ohio has further explained that "[a] defendant has a fundamental right to be present at all critical stages of his criminal trial. Article I, Section 10, Ohio Constitution; Crim.R. 43(A). A defendant's absence, however, does not necessarily result in prejudicial or constitutional error. '[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, *and to that extent only.*' (Emphasis added.) *Snyder v. Massachusetts*, 291 U.S. 97, 107-108, 54 S.Ct. 330, 78 L.Ed. 674 (1934); [*State* v. ]*Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, at ¶ 139." *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, ¶ 83.

{¶37} This principle is embodied in Crim.R. 43(A)(1), which provides, in relevant part:

{¶38} "Except as provided in Crim.R. 10 and divisions (A)(2) and (A)(3) of this rule, the defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules. In all prosecutions, the *defendant's voluntary absence after the trial has been commenced in the defendant's presence shall not prevent continuing the trial to and including the verdict.*" (Emphasis added.)

{¶39} This court has acknowledged the predicament with which a trial court is faced when a defendant fails to return for the conclusion of the proceedings against her.

9

"In such circumstances, the trial court is placed in the unenviable position of having to determine whether * * * to continue the proceedings without the accused, often with little or no evidence as to the reasons for the defendant's absence. However, the voluntariness of an accused's nonappearance is an issue of fact, and the court is permitted to find that a defendant's absence was voluntary when there is unrebutted evidence that the accused was aware of his obligation to attend the court's proceedings." *State v. Jones*, 11th Dist. Lake No. 2008-L-028, 2008-Ohio-6559, ¶ 31, quoting *In re Ruth*, 11th Dist. Ashtabula No. 96-A-0086, 1998 WL 552997, *9 (June 19, 1998).

{¶40} As our review indicated, Ms. Wyatt was unable to attend trial because her "ride fell through." The trial court denied defense counsel's motion to continue, noting Ms. Wyatt had ample notice of the trial date and she was present for the first day of trial when the jury was empaneled.

{¶41} It is clear Ms. Wyatt was aware of her obligation to attend trial. Further, she did not put forth any evidence or argument that she was somehow involuntarily prevented from attending the trial. Most fundamentally, she failed to demonstrate or even argue that her absence deprived her of a "fair and just" hearing. *See Grate* at ¶ 83.

{¶42} Ms. Wyatt's first assignment of error is without merit.

### Sufficiency of the Evidence

{¶43} In Ms. Wyatt's second assignment of error, she challenges the sufficiency of the evidence. More specifically, she contends the state failed to put forth sufficient evidence that she committed burglary or kidnapping since she did not have a "purpose" to commit a criminal offense or to facilitate the commission of any felony or flight

10

thereafter.  Rather, she was attempting to rescue G.W. from Mr. Wyatt, who was sexually abusing her.[1]

**{¶44}** Crim.R. 29(A) provides "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."  "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state."  *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶ 18.

**{¶45}** "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'"  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990).  "In essence, sufficiency is a test of adequacy."  *Id.*  "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable

---

1. Ms. Wyatt also contends that the evidence was insufficient to support her convictions for violating the CPO, and in her third assignment of error, that her convictions for violating the CPO and abduction are against the manifest weight of the evidence.  We decline to address these portions of her arguments because we find there was sufficient evidence to support her convictions for burglary and kidnapping, and the manifest weight of the evidence supports the jury's verdicts on those counts.  *See State v. Mugrage*, 11th Dist. Portage No. 2020-P-0066, 2021-Ohio-4136, ¶ 133 (an appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless); *State v. Powell*, 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990) ("Since the trial court merged the kidnapping convictions with one another, [the defendant] received only one sentence for kidnapping, and an erroneous verdict on Count Three would be harmless beyond a reasonable doubt").  We note, however, that her argument regarding failure of service after the full CPO hearing, from which she was absent, is unavailing since she pleaded guilty to violating the CPO in a previous case in April 2022 and the terms and conditions of the CPO were presented to the jury via the CPO and witness testimony.

11

Case No. 2023-L-039

doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶46} Ms. Wyatt was convicted of burglary, a second-degree felony, in violation of R.C. 2911.12(A)(1), which provides,

{¶47} "No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense[.]"

{¶48} "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶49} Ms. Wyatt was also convicted of kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(2), which provides, "No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person[:] [t]o facilitate the commission of any felony or flight thereafter[.]"

{¶50} As our review of the jury trial reveals, the state submitted more than sufficient evidence by way of witness testimony, video footage of the incident, and a

12

recording of the phone call Mr. Wyatt made to 911. The evidence reflected that Ms. Wyatt trespassed into Mr. Wyatt's home late at night, in violation of the CPO. Mr. Wyatt testified that Ms. Wyatt told him she was taking G.W. and grabbed her. Ms. Wyatt appeared to be highly intoxicated, and she was not making sense. She fled the apartment, attempted to drive away in her car, and then walked with G.W. to the bus stop located at the front of Mr. Wyatt's apartment complex, where she was apprehended by the police.

{¶51} Simply because Ms. Wyatt allegedly had the belief that Mr. Wyatt was sexually abusing the child, it does not follow that she did not have the requisite intent to commit a criminal offense, i.e., violating the CPO and taking G.W. from her home late at night. In *State v. Johnson*, 11th Dist. Lake No. 2006-L-259, 2007-Ohio-5783, we explained, "The purpose prohibited by the statute is the purpose to commit *any* criminal offense. * * * Purpose is a decision of the mind to do an act with a conscious objective of engaging in specific conduct or producing a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct. * * * The purpose with which a person does an act is determined from the manner in which it is done, the means or weapon used, and all the other facts and circumstances in evidence." (Emphasis added.) *Id.* at ¶ 38-40.

{¶52} The state presented sufficient evidence from which a jury could find, beyond a reasonable doubt, that Ms. Wyatt intended to commit a crime when she entered Mr. Wyatt's home without permission and in violation of the CPO.

13

Case No. 2023-L-039

{¶53} Similarly, the state introduced sufficient evidence from which a jury could find, beyond a reasonable doubt, that Ms. Wyatt was taking G.W. in the facilitation of committing a felony or flight thereafter.

{¶54} Ms. Wyatt's second assignment of error is without merit.

**Manifest Weight of the Evidence**

{¶55} In Ms. Wyatt's third assignment of error, she contends her convictions for burglary and kidnapping are against the manifest weight of the evidence because she took G.W. for the purpose of protecting her.

{¶56} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, *supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶57} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be

14

made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶58} Ms. Wyatt's argument that she took G.W. out of her home late at night without permission and in violation of a CPO to "protect her" does not equate to a determination that the manifest weight of the evidence does not support the jury's verdict. The jury was well aware of Ms. Wyatt's version of events. The video showed Ms. Wyatt telling the police G.W. was being abused and she was "protecting her" and also showed G.W. agreeing. "'[A] conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version.'" *State v. Gutierrez-Reynoso*, 11th Dist. Lake No. 2022-L-130, 2023-Ohio-3122, ¶ 66, quoting *State v. Ferrell*, 2020-Ohio-6879, 165 N.E.3d 743, ¶ 59 (10th Dist.).

{¶59} Further, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). This is because the trier of fact "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc.* at 80. "A

15

fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 58.

**{¶60}** Upon review of the evidence presented, we cannot say the jury clearly lost its way and created a manifest miscarriage of justice in finding Ms. Wyatt guilty of burglary and kidnapping.

**{¶61}** Ms. Wyatt's third assignment of error is without merit.

### Jury Instruction on Kidnapping

**{¶62}** In Ms. Wyatt's fourth assignment of error, she contends the trial court committed plain error and violated her right to due process by failing to instruct the jury that kidnapping was required to be committed with purpose to facilitate a felony or flight thereafter, especially when her only "purpose" was to protect G.W. from sexual abuse.

**{¶63}** The standard of review for failure to give a requested jury instruction is abuse of discretion. *State v. Kovacic*, 2012-Ohio-219, 969 N.E.2d 322, ¶ 14 (11th Dist.). However, a defendant who fails to object to the absence of a jury instruction waives all but plain error on appeal. *Id.* Plain error exists only when, but for the error, the outcome of the trial would have been different. *Id.* "'Plain error is to be invoked only in exceptional circumstances to avoid a miscarriage of justice.'" *Id.*, quoting *State v. Bennett*, 11th Dist. Ashtabula No. 2002-A-0020, 2005-Ohio-1567, ¶ 55. Therefore, to warrant reversal for plain error, this court must find that (1) there was an error, i.e., a deviation from a legal rule, (2) the error was plain, i.e., there was an "'obvious'" defect in the trial proceedings, and (3) the error affected substantial rights, i.e., affected the outcome of trial. *Id.*, quoting *Bennett* at ¶ 56.

16

{¶64} A jury instruction is proper when "(1) the instruction is relevant to the facts of the case; (2) the instruction gives a correct statement of the relevant law; and (3) the instruction is not covered in the general charge to the jury." *Mentor v. Hamercheck*, 112 Ohio App.3d 291, 296, 678 N.E.2d 622 (11th Dist.1996).

{¶65} The trial court instructed the jury on count four, kidnapping, as follows:

{¶66} "Count 4 - Kidnapping. Count 4, the defendant is charged with kidnapping. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about July 26, 2022, in Lake County, Ohio, the defendant by force, threat, or deception, or if G.W. was under the age of thirteen, by any manner or means, did remove the victim G.W. from the place where she was found or restrain the liberty of G.W. *with the purpose of facilitating the commission of a felony or flight thereafter*." (Emphasis added.)

{¶67} The court also defined "force," "threat," "deception," and the special finding that if G.W. is less than 13 years of age, the manner or means by which Ms. Wyatt accomplished the act is immaterial. The court further explained "purpose to remove a victim from the place" or "restrain the victim" is an essential element of the offense; the definition of "purpose"; the meaning of "remove from a place where found," "restrain one of his or her liberty," and "facilitate"; and that "[t]he felonies of burglary and violating a protection order are defined elsewhere in these instructions and you are to use those instructions here."

{¶68} The court's instruction on kidnapping mirrors that of the Ohio Jury Instructions on kidnapping. *See* Ohio Jury Instructions, CR 505.01(A) (Rev. May 7, 2016). Although not mandatory, "[t]he Ohio Jury Instructions are authoritative and are

17

generally to be followed and applied by Ohio's courts." *State v. Varner*, 2020-Ohio-1329, 153 N.E.3d 514, ¶ 54 (11th Dist.).

{¶69} As a plain reading of the court's instruction reveals, the court did not omit, as Ms. Wyatt contends, that the jury had to find Ms. Wyatt removed G.W. with the purpose of facilitating the commission of a felony or flight thereafter. Rather, the court's instruction discussed "purpose" in several places, including the "purpose of facilitating the commission of a felony or a flight thereafter," "the purpose to remove or restrain," and the definition of "purpose." When reviewing the validity of a particular jury instruction, the challenged instruction may not be reviewed in isolation but must be reviewed within the context of the entire charge. *State v. Bates*, 11th Dist. Portage No. 99-P-0100, 2001 WL 314855, *5 (Mar. 30, 2001).

{¶70} Ms. Wyatt also argues that she had no "purpose" to commit a felony but was trying to protect G.W. from "physical and sexual abuse." This argument goes to the manifest weight of the evidence, not to whether the jury instruction on kidnapping was erroneous. As we explained above, the jury was free to believe the state's version of events.

{¶71} In sum, our review of the court's jury instruction on kidnapping reveals it (1) is relevant to the facts of the case, (2) gives a correct statement of the relevant law, and (3) covered the specific offense charged, i.e., kidnapping. Thus, we do not find any error, plain or otherwise, in the court's jury instruction.

{¶72} Ms. Wyatt's fourth assignment of error is without merit.

18

**Ineffective Assistance of Counsel**

{¶73} In her fifth assignment of error, Ms. Wyatt contends her counsel was ineffective because he failed to stipulate to her prior conviction for violating the CPO and, further, failed to cross-examine the officer who authenticated the copies of the CPO, Ms. Wyatt's service of summons for the CPO hearing, and her prior conviction. She contends this prejudiced the jury against her, and she would have been acquitted but for counsel's failure to stipulate.

{¶74} "'In evaluating ineffective assistance of counsel claims, Ohio appellate courts apply the two-part test enunciated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668[, 104 S.Ct. 2052, 80 L.Ed.2d 674]. * * * First, it must be determined that counsel's performance fell below an objective standard of reasonableness. Second, it must be shown that prejudice resulted. "Prejudice exists when 'the result of the trial would have been different' but for counsel's ineffectiveness."'" (Internal citations omitted.) *State v. Allen*, 11th Dist. Lake No. 2011-L-157, 2013-Ohio-434, ¶ 15, quoting *State v. Woodard*, 11th Dist. Ashtabula No. 2009-A-0047, 2010-Ohio-2949, ¶ 11.

{¶75} In applying the foregoing standard, a reviewing court indulges a strong presumption that counsel's conduct is within the wide range of reasonable professional representation. *Strickland* at 689. An attorney's arguably reasoned strategic or tactical decisions do not generally constitute ineffectiveness. *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

{¶76} Ms. Wyatt was charged with violating a CPO pursuant to R.C. 2919.27(A)(1) and (B)(4), which required the jury to find that she violated the CPO while

19

committing a felony and elevated the offense from a first-degree misdemeanor to a third-degree felony. Ms. Wyatt was also charged with violating a CPO pursuant to R.C. 2919.27(A)(1) and (B)(3), which required the jury to find she had previously been convicted of violating a CPO and elevated the offense to a fifth-degree felony.

{¶77} Prior convictions that affect the degree of the offense are an essential element of the crime that must be proven by the state beyond a reasonable doubt. *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 8. "[A] certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." R.C. 2945.75(B)(1). *See State v. Zachery*, 11th Dist. Trumbull No. 2019-T-0082, 2021-Ohio-2176, ¶ 28.

{¶78} A review of the officer's testimony at trial reveals he authenticated the documents surrounding the CPO and Ms. Wyatt's conviction for violating the CPO. He testified to the dates of the documents, the term of the CPO, and what the CPO prohibited, including entering or interfering with Mr. Wyatt's residence even with the permission of a protected person. On cross-examination, the officer clarified he was not present at any of the hearings (CPO or prior conviction), he only knew of the contents of the documents from reading them, and he was not involved in the investigation of the incident. Per Ms. Wyatt's counsel's request, the factual basis for the CPO was not presented to the jury. In addition, Mr. Wyatt and one of the arresting officers testified to the existence of the CPO and its terms and conditions.

{¶79} As the Supreme Court of Ohio explained in *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, where the appellant made a similar argument

20

that his counsel was ineffective for not objecting to the journal entries or offering to stipulate to his prior convictions, "even assuming that counsel should have objected to the judgment entries or offered to stipulate to the convictions, [the appellant] has not established a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' *Strickland* \* \* at 694 \* \* \*. If [the appellant] had stipulated to his prior offenses, the jury still would have learned that he had at least prior felony drug convictions and prior domestic-violence convictions" because the appellant's prior convictions were essential elements of the offenses charged. *Id.* at ¶ 153. Further, other witnesses testified about the incidents underlying the domestic-violence convictions. *Id.*

**{¶80}** Ms. Wyatt failed to allege this had any prejudicial effect on the jury beyond that of any prior conviction, much less that it was caused by her counsel's error. Even if counsel had prejudicially erred, it would not have changed the outcome since there was more than sufficient evidence to support her convictions.

**{¶81}** Ms. Wyatt's fifth assignment of error is without merit.

### The Constitutionality of the Reagan Tokes Law

**{¶82}** In her sixth assignment of error, Ms. Wyatt contends her indefinite sentence imposed pursuant to the Reagan Tokes Law is unconstitutional. She also notes *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, was pending before the Supreme Court of Ohio at the time she filed this appeal.

**{¶83}** While the instant matter has been pending, the Supreme Court of Ohio decided *Hacker* and found the Reagan Tokes Law is constitutional, i.e., the law does not

21

violate the doctrine of separation of powers or the constitutional rights to due process or trial by jury, and further, it is not void for vagueness.

{¶84} Thus, Ms. Wyatt's sixth assignment of error is without merit.

**Sentencing Notifications Pursuant to R.C. 2929.19(B)(2)(c)**

{¶85} In Ms. Wyatt's seventh assignment of error, she contends her indefinite sentence for kidnapping is contrary to law because the trial court failed to advise her of the R.C. 2929.19(B)(2)(c) notifications when imposing her sentence.

{¶86} However, while her appeal was pending, the trial court held a hearing on Ms. Wyatt's motion for judicial release, which it granted. The state of Ohio, without opposition, moved this court to supplement the record in this appeal with the trial court's November 17, 2023 Judgment Entry of Judicial Release, which, inter alia, modified the original sentence, placed her on community control, and on the record advised her of the R.C. 2929.19(B)(2)(c) notifications, thus, rendering her assignment of error moot.

{¶87} Finding Ms. Wyatt's assignments of error to be without merit and/or moot, the judgment of the Lake County Court of Common Pleas is affirmed.

JOHN J. EKLUND, P.J.,

MATT LYNCH, J.,

concur.

22

Case No. 2023-L-039